JiDUFRESNE, Judge.
This is an appeal by Byron Carey, a workers’ compensation claimant, from an adverse determination of his claim for total permanent disability benefits by a Hearings Officer of the Office of Workers’ Compensation Administration. Because we find no legal or manifest factual error on the part of the Hearings Officer in reaching this decision, we affirm his denial of further compensation benefits to the claimant.
The facts of claimant’s accident are not disputed. He was breaking up a concrete slab with a jack-hammer when his foot got tangled in some exposed reinforcing mesh. He apparently lost his balance and the hammer fell on his leg, injuring his knee. The accident occurred on April 7, 1987. Employers National Insurance Co. (ENIC), the employer’s compensation insurer, paid Carey $160.00 per week in benefits from the time of the injury until March 16, 1990. It also paid for all medical treatments during |2that period, which included two arthroscopic procedures on the knee. When ENIC terminated benefits, Carey filed this claim with the Office of Workers’ Compensation Administration, urging that he was totally and permanently disabled, and that the termination of benefits was arbitrary and capricious, thus entitling him to penalties and attorney fees. A full hearing was held on January 28, 1992, and a judgment was signed on January 4, 1993. In his reasons for judgment, the Hearings Officer concluded that aside from his own complaints of pain claimant produced no “clear and convincing” proof that he was still disabled. He therefore ruled in favor of the insurer and dismissed claimant’s case. This appeal followed.
Two errors are urged here. First, claimant contends that the Hearings Officer erred as a matter of law in applying the “clear and convincing” standard of proof, rather than the simple “preponderance of the evidence” standard. Second, he asserts that the trier of fact fell into manifest factual error in finding that claimant was not totally and permanently disabled. We reject both arguments.
As to the first question, concerning the proper standard of proof, L.S.A.-R.S. 23:1221(2)(c) provides unambiguously that:
[Cjompensation for permanent, total disability shall be awarded only if the employee proves by clear and convincing evidence ... that the employee is physically *651 unable to engage in any employment or self-employment.... (emphasis added)
This standard was correctly applied by the Hearings Officer. Any argument that the less stringent “preponderance” standard should have been used instead is contrary to the clear statutory language quoted Rabove and must, therefore, be rejected.
Claimant’s second argument is that the factual findings of the trier of fact were manifestly erroneous. In this regard, he is correct in implicitly noting that the proper standard of appellate review of factual determinations made by Hearings Officers in workers’ compensation cases is the same as that applicable to cases originating in the district courts, i.e. facts determined by the trier of fact cannot be rejected on appeal unless they are manifestly erroneous or clearly wrong, Charles v. Travelers Insurance Co., 627 So.2d 1366 (La.1993). However, claimant’s further assertion that such error occurred here is not supported by the record.
The particulars of claimant’s medical treatments are as follows. The day after the accident, he was seen by Dr. Richard Robi-chaux, an orthopedic surgeon. It was this doctor’s initial opinion that claimant’s subjective complaints of pain were out of proportion to the injury, but he nontheless began conservative treatment. After several weeks of continued complaints of pain, the doctor decided to perform arthroscopic surgery on the knee. He stated that this procedure takes about 45 minutes, is done on an outpatient basis, and generally has a recovery period of one to three months. In this particular case, the doctor said he found that the knee was basically normal, except for a small tear in the medial meniscus, which he removed during the surgery. During the next several months, claimant continued to complain of pain which the doctor still found disproportionate to the original injury and the surgéry. In fact, by August 19,1987, the doctor could find absolutely no physical |4reason to substantiate any complaints of pain. This doctor finally testified that during the latter part of 1987, he learned from the physical therapist to whom he had referred the patient that Carey did not seem to be making much effort at rehabilitation. On the last visit of December 30, 1987, the doctor was still of the opinion that there was no objective evidence of any problem that could cause the level of pain which claimant was still reporting.
The claimant then began to see Dr. V.J. Zeringue. This doctor performed a second arthroscopic surgery on Carey on February 3,1988, but again reported minimal findings. On May 22,1990, after some two more years of conservative treatment, this doctor released Carey to return to work. His final opinion was that claimant had reached maximum cure and that he had a 30-35% disability in his knee which translated into a total bodily disability of 20%. He further stated that although claimant should avoid climbing, squatting or repetitive bending of the knee, and not carry more than 50 pounds, he nonetheless could return to work.
The insurer also sent claimant to a consultant, Dr. J.K. Saer, an orthopedic surgeon, in December of 1988, some ten months after the second arthroscopic procedure. It was this expert’s opinion that there were no objective findings to support claimant’s continuing complaints of pain or his claimed inability to fully bend his knee. He thought then that there was no physical finding which would prevent Carey from returning to work. Almost a year later, in October of 1989, this doctor again saw the claimant on a consultative basis. His opinion then was again that there was no physical evidence of any continuing problem with the knee, Rand that claimant’s subjective claims that he could not fully flex the joint and that there was continuing pain were not supported by any physical findings. In his written report, the doctor concluded that there was a “substantial functional overlay” in these claimed symptoms. When asked in deposition to explain this language, he testified as follows:
I put it [in the report] in terms of there is evidence of substantial functional overlay which means [the claimed loss of flexion] is phoney and also the symptoms are out of proportion to the appearance of the knee joint.
Upon receipt of the written report of Dr. Saer in late 1989, the insurer requested appointment of an independent medical examiner by the Office of Workers’ Compensation *652 Administration, and Dr. Thad Broussard, an orthopedic surgeon, was appointed. His report of January 29, 1990, stated that claimant had reached nearly maximum benefits from any medical treatment, and that he should have a functional capacity assessment and return to work within the confines of that assessment. The insurer scheduled an appointment for such an assessment in Baton Rouge on February 20, but claimant called the day before and said he had not received sufficient notice. It was rescheduled for February 27, but claimant did not show up for the appointment, claiming that because that was Mardi Gras day, he assumed the testing center was closed. A third appointment was made, but claimant called the day before and refused to appear on advice of counsel. At that point, the insurer terminated all benefits.
On this evidence, the Hearings Officer concluded that claimant’s only evidence of disability was his own testimony that he cannot flex hisjjjknee properly and that he remains in substantial pain. The trier of fact obviously believed the testimony of most of the physicians that there was no objective physical explanation for any disabling condition or pain of the level asserted by claimant. Further, Dr. Zeringue, claimant’s most favorable witness, was of the opinion that the knee problem represented at most a 35% loss of function in that member, and that claimant could return to work with only certain restrictions as to climbing, stooping and weight-bearing. Given this evidence, it can hardly be said that the ultimate factual conclusion of the Hearings Officer, that claimant did not prove by clear and convincing evidence that he is totally and permanently disabled from any employment, was manifestly erroneous or clearly wrong. Absent such error, we are precluded from overturning that factual conclusion.
For the foregoing reasons, we therefore affirm the judgment of the Hearings Officer dismissing Byron Carey’s claim for further compensation benefits.

AFFIRMED.