J_iSCHOTT, Chief Judge.
This is a worker’s compensation case arising out of an alleged accident occurring on August 20, 1988. Under the statutory scheme in effect at that time, plaintiff submitted his claim with the Office of Workers Compensation, which issued a recommendation that his claim was not work related. Rejecting that recommendation, plaintiff filed suit in the district court, which granted him benefits for permanent disability pursuant to LSA-R.S. 23:1221 subject to credits for social security disability payments which plaintiff is receiving. The issues on appeal are whether plaintiff carried his burden of proving that 1) there was an accident; 2) the alleged accident caused the physical condition he was in at trial time; and 3) he is entitled to benefits for permanent total disability.
Plaintiff was born in Chile in February 1932. He came to New Orleans in 1981. For most of his work life, he was engaged in heavy labor including fourteen years as a driller and a miner in Chile. He started working for Schwegmann’s on June 25, 1985. He testified that he stopped working there because he was not physically capable due to several work-related accidents including a back injury in 1985 while he was working at the warehouse causing him to miss five or six days; the dislocation of a disc in 1986; and his hand ^getting smashed in another incident causing him to miss a week of work. He said that in the beginning of 1987 he was made to work so hard that he got sick for a month and when he returned he was able to get an assignment as a stock clerk.
He further testified as follows:
*1381 On August 19, 1988, as he was bending over to put a box down, he fell to the floor. The supervisor said that he could not work anymore. He lay down after lunch and could not get up to work. He never went back to work because he was in bed for five weeks with pain. He believed that the degeneration of his back happened when he was working in the deli. He worked alone and he had to pull 600 pound racks. Sometimes even with three people, they would not move because the wheels were in bad condition.
He reported the accident to his supervisor and to Mr. Foti, the new manager. They informed the central office. The personnel director, Mr. Lee, told him not to worry, that they would pay him compensation retroactively.
Andres Roques, a Schwegmann’s personnel representative, testified that there was no report of any accident which gave rise to plaintiffs complaints. Roques stated that plaintiff came to see him after he left in August and said he was disabled. However, he did not attempt to make a worker’s compensation claim; he was simply inquiring about the possibility of collecting some disability benefits. Not until he received an October 31, 1988 letter from plaintiffs attorney did he know the plaintiff was claiming a job accident. Roques questioned plaintiffs supervisory personnel, but none had a report that plaintiff sustained a back injury on the job.
Plaintiff called Gerardo Ruiz, another Sehwegmann’s stock clerk, who was working in a nearby aisle when plaintiff allegedly had his accident. He said he heard a “commotion” from the aisle where plaintiff was working. He went over and found plaintiff complaining of pain in his back. Their supervisor, Troy Ball, was there, and plaintiff indicated that he hurt himself | ¡¡while lifting a case of canned goods. According to Ruiz, Ball told plaintiff he was going to make a report.
In this court defendant points to a number of suspicious circumstances which cast doubt on the trial court’s finding that plaintiff had an accident. These include the fact that he saw his private physician; Dr. Pedro Angulo, two or three days after the alleged accident, but he told him nothing about it. Dr. Angulo took it as just another recurrence of his chronic back trouble. Then on October 26, 1988, plaintiff was examined by Dr. Gordon Nutik, an orthopedic surgeon, in connection with a claim plaintiff was making for Social Security disability benefits, but plaintiff said nothing about an accident on August 20,1988. He told Nutik that he hurt his back in a November 1985 incident at work. Again, plaintiff was treated at Charity Hospital on October 17, 1988, for a low back pain of a month’s duration and those records show that he denied any trauma. Finally, plaintiffs wife testified that she knew his back was hurting after August 20, 1988, be-, cause she prepared a claim he was making for disability benefits, but she knew nothing about an accident.
Plaintiffs own credibility was in doubt for other reasons. He stated in his employment application with Schwegmann’s that he had no back problems. Yet he was treated by Dr. Gordon McHardy for back problems in 1981 and again in February 1985. When he was seen by Dr. Robert Applebaum in 1990, he denied any back problems.
Despite all these curiosities and inconsistencies, the trial judge was apparently satisfied that plaintiff and Ruiz told the truth. Even though the trial judge had nothing more to go on than we do, since the entire case was submitted on depositions, and even though we would probably conclude that there was no accident, we must defer to the fact finder. The conclusion of the trial court that there was an accident is not manifestly erroneous because it was Usupported by the testimony of plaintiff and corroborated by that of Ruiz.
Next, there is the issue of causation by the accident for plaintiffs back condition at the time of the trial. A summary of the medical testimony is essential to this discussion.
Dr. Gordon McHardy, a practitioner of internal medicine, first saw plaintiff in 1982. In February 1985 plaintiff came with complaints of neck and low back pain. X-rays showed degeneration L4 and changes in the *1382 cervical spine. McHardy thought this had developed over a long period of time and he recommended that plaintiff stop heavy lifting and straining. Plaintiff came again in February 1988 with acute back pain from pulling a heavy load of milk. McHardy would not say that plaintiffs condition at that time was work related, but he thought plaintiff would continue having problems and that he should not do any heavy work.
Dr. Pedro Angulo, a family practitioner, had been treating plaintiff since October 1987 for lumbar pain and stiffness. At that time plaintiff was unable to stand up and his range of motion was about fifty percent. He said he hurt his back while he was pushing something at work. Angulo diagnosed a lumbar sprain. In March 1988 plaintiff came into the office with lumbar pain, stiffness, and severe spasm. The diagnosis was arthritis of the spine. Plaintiff returned in April 1988 with pain and stiffness, reporting that he was unable to bend and stand up. Angulo thought he had a disc problem.
Throughout this period of time, Angulo was giving him medication for pain, and he recommended that plaintiff see an orthopedist. Then, on August 22,1988, two or three days after the accident now sued on, plaintiff again came to Angulo who described the problem as “another recurrence.” Angulo stated that he did not know what caused the recurrence. He had no note that it occurred at work and couldn’t say whether it occurred at work or even when Isplaintiff was in bed. He treated plaintiff until October 13, 1988, while he continued to complain of severe lumbar pain. The diagnosis was lumbar inflammation and spondylitis. Angulo stated that plaintiff was able to work between October 1987 and October 1988, but he would come in every few days asking for more medication for his pain and for a note excusing him from work.
Dr. Gordon Nutik, an orthopedic surgeon, saw plaintiff on October 26, 1988, in connection with his application for Social Security disability benefits. Plaintiff told him he had hurt himself at work in November 1985. He did not tell Nutik that he was working from November 1985 to August 1988 and he gave no history of any other accident after November 1985. Examination revealed pain on palpation between L3 and L5, but a normal range of motion, no muscle spasm, normal forward flexion, and negative stretch tests. X-rays showed narrowing and sclerosis of the facet joints at L4-5 and L5 to SI, and osteo-phytes at L4-L5. These conditions took a long time to develop. The diagnosis was degenerative disc changes and degenerative facet disease. He restricted plaintiff from heavy lifting, climbing or excessive stooping, but he stated that plaintiff could engage in light to medium work and had no physical excuse to be unemployed or on total disability. Nutik thought plaintiffs condition was strictly degenerative and unrelated to any trauma and, assuming that he suffered a trauma in August 1988, he probably reverted to his pre-injury status by October. There were no findings to indicate that any accident occurred which might be the proverbial straw that broke the camel’s back and ended his ability to work.
Dr. Robert Applebaum, a neurosurgeon, saw plaintiff on March 26, 1990. He was complaining of pain in his low back and leg which he (plaintiff) related to an August 1988 accident when he was lifting a heavy load. Plaintiff Instated that he had not worked since that accident, but he also said that he had no back problems prior to August 1988. From the records of Charity Hospital, Ap-plebaum found that plaintiff had been treated there in October 1988, he denied any trauma at that time, and he gave a history of back problems that started prior to August 1988. Applebaum thought plaintiff’s condition preexisted anything that might have happened in August. A month before this, he was having weakness, muscle tremors, and inability to stoop or kneel. The problems Applebaum saw in 1990 were a continuation of those he had before August 1988 and were not the result of a new injury. He probably had a ruptured disc which may have been aggravated by lifting, but whatever happened in August was not a significant precipitating factor in view of his prior problems and the extent of the degeneration. He advised that plaintiff avoid heavy work.
Dr. Donald Gordillo, a general surgeon, first saw plaintiff in August 1990. He stated *1383 that he was having pain and stiffness in his low back which started in the August 1988 accident. He had been to Dr. Angulo, then a chiropractor, then Charity Hospital. He told Gordillo that he did not suffer with his back prior to August 1988. An examination revealed spasm and pain on palpation. A CT scan revealed foraminal stenosis at L5-S1 and spinal stenosis at L4-5 as well as spur formation, but no disc herniation. Gordillo treated plaintiff for his back as well as a number of unrelated problems until December 7, 1992, when he told plaintiff to return as needed. He blamed much of plaintiffs problems on the chiropractor plaintiff had seen and he maintained that he (Gordillo) could have helped plaintiff much more if he had seen him starting in August 1988. Nonetheless, he thought plaintiff had a permanent back problem even though he greatly improved while under Gordillo’s care. When asked the critical question as to whether plaintiffs final ^condition was related to or caused by an August 1988 accident, Gordillo equivocated. Once he said that it would depend on whether plaintiff was telling the truth that he had no history of previous back problems. Assuming that he did, Gordillo would not be able to attribute his problems at trial time to a single 1988 incident. When he was specifically asked if the August 1988 accident was the straw that broke the camel’s back, he said it would probably be but only if “all the antecedents come out.” In other words, the straw that broke the camel’s back notion would apply only if he had no accidents before the one in August 1988.
The evidence is uncontradicted that plaintiff had serious, disabling back problems before the accident sued on, he continued to do heavy work against the advice of his physicians, and he was working in pain under medication at least since 1985. There is no evidence to support the conclusion that he was worse off after the August 1988 accident as there was in cases such as Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94) 635 So.2d 166 and Herty v. City of New Orleans, 94-1960 (La.App. 4 Cir. 4/13/95) 654 So.2d 785. It was plaintiffs burden to prove that the incident of August 1988 caused his physical disability. The only medical evidence even remotely supporting this conclusion was in the testimony of Dr. Gordillo, but that testimony was entirely based upon his assumption that plaintiff told him the truth when he said his back was fine until the incident of August 1988.
Under Louisiana jurisprudence, a presumption of causation arises in worker’s compensation cases when an accident has occurred and the worker never returns to his job. Walton v. Normandy Village Homes Ass’n, Inc., 475 So.2d 320, 324-25 (La.1985); Gary v. H.B. Zachry Co., 631 So.2d 671, 677 (La.App. 3d Cir.), writ denied 637 So.2d 159 (La.1994). However, that presumption is re-buttable. In the instant ease, the medical evidence, which Igindicates that the plaintiff was no worse off after the accident than before, is sufficient to" overcome the presumption. After considering the record as a whole, we find that the plaintiffs failure to return to work after the accident does not require a finding that the work-related accident caused the plaintiffs alleged disability in this case. The medical evidence indicates that the plaintiffs disability predated the accident which is the subject of this suit. Accordingly, we find that the accident did not cause the disability.
Having concluded that plaintiff failed to prove causation and that the trial court committed manifest error in concluding that he did, we could end this discussion. However, for the benefit of a reviewing court, we have also considered whether plaintiff proved entitlement to benefits for permanent total disability even assuming that his condition was caused by the August 1988 incident.
LSA-R.S. 23:1221(2)(c) provides that:
... compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the loca *1384 tion or availability of any such employment or self-employment.
Plaintiff provided no evidence at all to meet the burden of proof placed upon him by the above subparagraph. The only statement in this entire record even touching upon this issue is an isolated statement by Dr. Gordillo that as of August 1990 he was too sore and stiff to engage in physical labor and that “he was not equipped to do any intellectual or clerical, not being too fluent in English and being totally new to the area.” This hardly meets the “clear andjgconvincing evidence” burden imposed by the statute. It fails to address his condition at trial time or even as of December 1992 when Gordillo last saw plaintiff and found him greatly improved as a result of his treatment. Furthermore, Gor-dillo’s testimony cannot be stretched to mean that plaintiff was unable to engage in any employment whatsoever.
We have concluded that plaintiff failed to prove that his disability was caused by the August 1988 incident at Schwegmann or that he was entitled as a matter of law to compensation for permanent total disability.
Accordingly, the judgment of the trial court is reversed and set aside and plaintiff’s suit is dismissed at his cost.

REVERSED AND RENDERED.