724 So.2d 230 (1998)
Ms. Earl Mae WELLER
v.
Margie BROWN, d/b/a Cattleman's Restaurant and Rockwood Insurance Company.
No. 97 CA 2155.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*231 David T. Butler, Jr., Baton Rouge, for Defendant-Appellant Louisiana Insurance Guaranty Association.
James Maughan, Baton Rouge, for Plaintiff-Appellee Ms. Earl Mae Weller.
BEFORE: FITZSIMMONS and GUIDRY, JJ., and CHIASSON, J. Pro Tem.[1]
GUIDRY, J.
In this worker's compensation case, appellant seeks review of the trial court's finding that the appellee remains totally and permanently disabled as a result of an earlier work-related injury. We reverse.

FACTS
Appellee, Earl Mae Weller, was employed as a waitress by Margie Brown, d/b/a Cattleman's Restaurant. On April 1, 1976,[2] while acting in the course and scope of her employment, Ms. Weller slipped on a wet cement floor, and landed on her coccyx (tailbone).[3] The fall was witnessed by at least one other restaurant employee. Immediately thereafter, Ms. Weller was evaluated in the emergency room of Earl K. Long Medical Center (hereafter referred to as "Earl K. Long") and released. Despite the fact that she returned to work that day, she continued treatment as a patient of the Office of Family Services, primarily at Earl K. Long, for continued complaints of lower back pain. Ms. Weller was fired on April 18, 1976, for allegedly threatening to sue her employer. On May 21, 1976, Ms. Weller assumed employment elsewhere as a cook on a tugboat and she maintained a number of other jobs of similar nature until March 22, 1977, when she ceased work of any nature. From that time, Mrs. Weller alleges that she has continuously experienced severe pain around her tailbone/lower back area; and, as a result, has been unable to work. Thus, she has continued to collect workers' compensation benefits for the last twenty-two years.

PROCEDURAL HISTORY
Appellee, Earl Mae Weller, initially brought suit against her employer, Margie Brown, and her workers' compensation insurer, Rockwood Insurance Company,[4] for the recovery of workers' compensation benefits. On January 22, 1979, the matter was tried and judgment rendered in favor of Ms. Weller, finding her totally and permanently disabled and entitled to full statutory benefits, but denied her claim for penalties and attorney's fees. In accordance with these findings, a judgment was signed on February 13, 1979, assessing weekly compensation benefits in the amount of $80.78 from March 22, 1977, until paid. Defendants were also cast for total and permanent compensation from that date forward for as long as Ms. Weller's disability continued, subject to statutory limitations. In addition, Ms. Weller was granted medical and drug expenses which were reasonable and necessary and which were incurred from the date of the trial for as long as her disability continued. After Rockwood Insurance Company was denied its request for a new trial, it unsuccessfully appealed this decision.[5]
Thereafter, LIGA petitioned the Nineteenth Judicial District Court for a termination and/or modification of the February 13, 1979 judgment. Trial was held on May 5, *232 1997. The trial court concluded that Ms. Weller remained totally and permanently disabled and LIGA was ordered to continue to pay her the sum of $80.78 per week as weekly disability benefits. LIGA was further ordered to pay for all travel for treatment of her work-related injury, including past and future travel expenses. Additionally, LIGA was ordered to pay for all unpaid chiropractic treatment rendered by Dr. Sidney Mouk. Finally, the trial court concluded that Ms. Weller was allowed to seek treatment from her chiropractor once a week and that LIGA was to pay those charges as long as they do not exceed what is reasonable and customary. From this judgment which was signed on June 25, 1997, LIGA now suspensively appeals.

ASSIGNMENT OF ERRORS
1. Whether Earl Mae Weller remains totally and permanently disabled as a result of her April 1, 1976, employment-related accident.
2. Whether medical and chiropractic treatment and mileage expenses resulting therefrom are reasonable and necessary and causally connected to Ms. Wellers' workers' compensation accident.

DISCUSSION
The x-ray of Ms. Weller's back, taken immediately following the accident, in the emergency room at Earl K. Long Medical Center, revealed a bruised tailbone. Ms. Weller now alleges, approximately twenty-two years later, that this injury warrants constant medical attention, in addition to causing pain so grave that she cannot assume employment. Appellant argues that Ms. Weller is not permanently and totally disabled, at present; but, alternatively, argues that if such a condition does exist, the disability is not causally related to her 1976 employment-related injury.

Surveillance Evidence
A surveillance tape contained in the record forcefully contradicts the existence of Ms. Weller's ailments, or at least the degree to which they plague her. The surveillance video reveals Ms. Weller performing various daily activities without any visible signs of discomfort or physical limitations. Specifically, she was seen driving to and from several stores; lifting groceries from the basket to the car and from the car to her house; walking comfortably and extensively at a rapid pace; and bending over to remove the gas cap underneath her license plate in the rear of her vehicle as she pumped gas into her vehicle. Most compelling was the footage of Ms. Weller actually bending completely over onto the ground, resting on her knees and maneuvering the upper portion of her body in order to look under the rear bumper of her car. After performing this feat, she entered an auto parts store, then exited the store and repeated the maneuver once again. It appeared as if she was performing some type of repair to the vehicle.

Medical Evidence
Dr. Sidney Mouk, a chiropractor, has been treating Ms. Weller twice a week for her injury, since 1976. He has diagnosed her as having an atypical disc lesion or a ruptured disk. However, Dr. Mouk testified that his diagnosis is the product of his reliance on the representations of Ms. Weller. He has never examined her to arrive at any objective findings of his own. The surveillance tape of Ms. Weller calls into question the physical limitations she reported to Dr. Mouk. The Louisiana Supreme Court has provided the following guidance in instances such as this:
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination....
Mack v. Imperial Trading Co., 95-537 (La. App. 5 Cir. 11/28/95), 665 So.2d 536, 539-540 (quoting Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992)).
In Bustamante v. Schwegmann Giant Supermarkets, Inc., 96-1519 (La.App. 4 Cir. 4/9/97), 691 So.2d 1379, writ denied, 97-1403 (La.9/19/97), 701 So.2d 170, the only medical evidence in support of plaintiff's disability *233 was testimony by his physician. When the court determined that the doctor's testimony was based upon the false representations the claimant made to the doctor, the court rendered the doctor's findings useless and reversed the trial court's judgment. What is important to note here is that Dr. Mouk admitted in his testimony that Ms. Weller could work if a vocational rehabilitation expert identified an appropriate job within her physical limitations.
Dr. Charles E. Duvall, a chiropractor, was hired by Rockwood Insurance Company to examine Ms. Weller's medical records. He reported the absence of any objective findings of the work-related injury. In addition, he concluded that the chiropractic treatment, which Ms. Weller has been undergoing since the injury, was medically unnecessary. He, too, noted that Ms. Weller was medically able to work. In fact, he even recommended work as a possible means of recovery.
LIGA employed Dr. Charles R. Herring to examine Ms. Weller in order to determine the nature and extent of her disability if one was found to exist and to assess the reasonableness of chiropractic treatment. This examination was conducted in the presence of Dr. Mouk, during which time Ms. Weller maintained that she was unable to flex her knees and her hips. Dr. Herring testified that his examination of Ms. Weller revealed no objective findings of back injury in relation to her 1976 work-related injury. In addition to testifying that she overstates her condition, he also testified to the absence of physical limitation. He too testified that Ms. Weller is medically able to work, provided she is limited to only light lifting.
K.E. Vogel, M.D., Ms. Weller's treating physician at the New Orleans Neurosurgical Group, reported that his examination of Ms. Weller revealed no objective findings of muscle spasm. He also urged Ms. Weller, as a part of his medical recommendation, to return to gainful employment at the completion of her course of therapy.[6]
Over the years, Ms. Weller has been examined by numerous orthopedists in an attempt to specifically assess any ongoing physical disability. On October 28, 1976, Stephen M. Wilson, M.D., an orthopedic surgeon, began seeing Ms. Weller. During his treatment of her, he conducted an orthopedic evaluation. The record contains a statement from him indicating the absence of swelling and inflammation in the lower back area and tenderness at the tailbone, as well as a prognosis that Ms. Weller's symptoms would subside and not lead to a permanent disability. In addition to noting that there were no objective findings to explain her subjective pain, he questioned whether Ms. Weller's tailbone was ever fractured. He stated that "if there was ever a fracture, it is well healed."
S. Henry LaRoca, M.D., who specializes in spine disorders and orthopedic surgery, began seeing Ms. Weller in 1983, and has seen her several times since, including for a previous automobile accident.[7] He concluded that Ms. Weller's problems were both age-induced and of a psychiatric nature. In addition, he could find no objective findings of a back problem.
Moss M. Bannerman, M.D., an orthopedic surgeon who examined Ms. Weller on four occasions, gave sworn testimony that he was unable to find anything in the orthopedic examination which he considered to be of a very disabling nature.
Joe Morgan, M.D., a specialist in orthopedic surgery, treated Ms. Weller once in 1986. He found no abnormalities which would bar Ms. Weller from working, no evidence of lumbar or cervical strain, or cervical or lumbar disc problems. He classified Ms. Weller's medical condition as normal for her age.
In the independent medical evaluation requested by LIGA, Randall D. Lea, M.D., of the Orthopedic and Sports Rehabilitation Institute, noted that Ms. Weller was threatening to him and his staff and very uncooperative with his efforts to evaluate her, including refusing to complete necessary paperwork. *234 As a result, he terminated the examination. Based upon the information he was able to ascertain, he reported the absence of any post-traumatic reason why Ms. Weller could not work, at least at a sedentary to light categorization.
Because of Ms. Weller's refusal to cooperate with LIGA's attempts to have her evaluated by Dr. Lea, as ordered by the court, Dr. Lea refused to re-examine Ms. Weller. A court-ordered examination was conducted by Dr. Ronald Sylvest, on April 8, 1996. After x-raying Ms. Weller, Dr. Sylvest reported no objective findings of a back injury; that Ms. Weller exaggerates her symptoms; and that her problems are psychological. He, too, refused to see Ms. Weller again in his office. Thus, the services of Dr. Charles Barkemeyer were solicited.
Dr. Barkemeyer, a neurologist at Louisiana State University Medical Center, reported that Ms. Weller's "neurological examination was not associated with signs of neurological deficit." He also completed a functional capacities evaluation which results induced his conclusion that Ms. Weller could function in a return to work environment. In light of the repeated inability to isolate any disabling physical limitations, LIGA next directed its attention to assessing Ms. Weller's psychological condition.
Dr. Thomas J. Hannie, Jr., Ph.D., a clinical psychologist, conducted a psychological evaluation of Ms. Weller on March 7, 1996. He reported that her scores suggest that "[r]eports of pain are grossly exaggerated. By continuing her complaints she manages to maintain her regular contact with her doctors and continues to receive some income." He further notes that psychological variables are likely to be playing a major role in her pain; Ms. Weller had strong negative feelings toward work. Finally, and most compelling, he reports that Ms. Weller "is capable of working in a situation in which she is not required to interact closely with others. Holding a job of any type would be beneficial to her."
Dr. John Taylor Howe, Ms. Weller's treating physician, was the only medical professional to render an opinion that Ms. Weller had a compensable injury. Dr. Howe, a physician trained in family practice and psychiatry, began treating Ms. Weller in 1978. Consistent with the other testimony in this case, he testified that he found no evidence of a lumbar disc problem. He concluded that her illness is of both a physical and psychiatric nature. As to the psychiatric nature, he diagnosed Ms. Weller as having Chronic Pain Syndrome, coupled with a personality disorder. Notwithstanding this fact, he testified that Ms. Weller could go to work.
In Louisiana, the opinion of the physician, especially the treating physician, is given great weight. Johnson v. Travelers Insurance Co., 284 So.2d 888, 891 (La.1973). A worker's compensation claimant is not entitled to benefits for permanent total disability, where the treating physician finds that the claimant can work, however restricted. See Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1st Cir.3/27/97), 693 So.2d 818, 828. See also, Anderson v. Aetna Casualty & Surety Company, 505 So.2d 199 (La.App. 3rd Cir.1987), writ denied, 511 So.2d 1152 (La. 1987).
Dr. Howe, Ms. Weller's treating physician, testified that her illness was part physical and part psychiatric. Ordinarily, the testimony of an employee's treating physician should be afforded more weight than that of an examining physician. Guidry v. Piccadilly Cafeterias, Inc., 95-12 (La.App. 3rd Cir.5/24/95), 657 So.2d 325, writ denied, 95-1601 (La.9/29/95), 660 So.2d 870. However, the testimony of a specialist is entitled to greater weight when the subject at issue concerns the particular field of the specialist's expertise. However, the trier of fact is not bound to accept the testimony of an expert, whose testimony is presumptively given more weight, if he finds the opinion is less credible than that of other experts. McClendon v. Keith Hutchinson Logging, 96-2373 (La.App. 1st Cir.11/7/97); 702 So.2d 1164, 1172, writ denied, 97-2872 (La.2/13/98); 706 So.2d 995. See also, Ponthier v. Vulcan Foundry, Inc., 95-1343 (La.App. 1st Cir.2/23/96); 668 So.2d 1315, 1317. We conclude under the circumstances of this particular case that numerous opinions by specialists, that there was the absence of a physical basis for Ms. Weller's complaints, should *235 be given greater weight than the determination of her treating physician. In any event, her treating physician and her chiropractor, along with the specialists, agree on the critical assessment that Ms. Weller can work. An employee is not entitled to collect permanent total disability when he is physically able to engage in any employment. Spencer v. Gaylord Container Corporation, 693 So.2d at 822 (quoting LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283, 1288 (La.App. 1st Cir.1977), writ denied, 351 So.2d 174 (La.1977)). The Louisiana Supreme Court has stated that:
[A] Claimant will not be held to be disabled within the meaning of the Workmen's Compensation Act solely because he suffers some residual pain and discomfort when he attempts to work following a work-connected accident.
* * * * * *
[A] worker is totally disabled only if he cannot engage in any gainful occupation for wages. A person who can engage in a gainful occupation is not totally disabled, even if such occupation is not the same or similar to his old occupation and even if it is not one for which he is particularly fitted by education, training or experience.
Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367, 369-70 (La.1980). In a factually similar case, the court in Cassard v. American General Fire & Casualty Company, 568 So.2d 1151, 1154 (La.App. 5th Cir.1990), stated:
We find that the trial judge was in error insofar as he found the plaintiff totally disabled. The record indicates clearly that he is disabled to the extent that he is unable to return to his former job as a roofer. However, the treating physician and psychologist both were of the opinion that he was able to perform light work and that it would be therapeutic for him to do so. The orthopedist's testimony indicates that the leg is permanently damaged and there is nothing in the record to suggest that it will improve, as arthritis has begun to progress.... [B]ecause he can at least perform odd-lot work, he cannot be declared permanently totally disabled.
In Barksdale v. Southern Airways, Inc., 365 So.2d 493 (La.App. 1st Cir.1978), this court overturned an award of total and permanent disability benefits. This court placed a high premium on the fact that there was a lack of medical testimony to the effect that the employee was incapable of engaging in any gainful occupation for wages.
In Carey v. UMC of Louisiana, Inc., 94-160 (La.App. 5 Cir. 7/26/94), 641 So.2d 649, the following evidence was before the hearing officer. First, claimant testified that he could not flex his knee properly and that he remains in substantial pain. In addition, most of the physicians testified that there were no objective findings for the disabling condition alleged by the claimant. Finally, claimant's most favorable witness, a doctor, testified that claimant could return to work with restrictions. Given this evidence, the appellate court affirmed the hearing officer's judgment that the claimant did not prove that he was totally and permanently disabled from an employment-related injury.
In McDonnell v. Nestle Beverage Company, 97-2029 (La.App. 4 Cir. 4/22/98), 714 So.2d 757, all three of the plaintiff's doctors opined that she suffered from lumbar disc disease. However, all three doctors said that she could perform light duty work. In addition to that testimony, a surveillance tape casts doubt on her veracity and the truthfulness of her testimony regarding her physical condition. Given these facts, the hearing officer's refusal to grant an award of total disability was affirmed.
The trial court erred in concluding that Ms. Weller remains totally and permanently disabled.[8] The surveillance tape and the abundance of medical evidence unquestionably indicate that Ms. Weller can work and is, therefore, not totally and permanently disabled.

*236 Payment of cost of medical care and expenses related thereto

To recover medical expenses under LSA-R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Patterson v. Long, 96-0191 (La.App. 1st Cir.11/8/96), 682 So.2d 1327, 1334, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499. The award of medical expenses must be limited to the expenses shown to have been made necessary by the work-related accident. See LSA-R.S. 23:1203. An injured employee is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks v. Universal Life Insurance Company, 95-1003 (La.App. 1st Cir.12/15/95), 666 So.2d 387, 391, writ denied, 96-0113 (La.3/8/96), 669 So.2d 400.
The trial court ordered LIGA to pay the cost of all unpaid chiropractic treatment rendered by Dr. Mouk, in addition to future chiropractor bills for weekly treatments. The question of whether the Claimant is entitled to medical benefits is ultimately a question of fact, and the trial court's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Starks, 666 So.2d at 391. Dr. John Howe, Ms. Weller's treating physician, testified that the chiropractic treatments are probably helpful, but not medically necessary. Dr. Duval testified that he did not feel that the chiropractic treatments rendered through the years by Dr. Mouk were medically necessary or beneficial to Ms. Weller. Moreover, the chiropractic bill review performed at the request of LIGA reported: the absence of evidence to substantiate the need for ongoing care following the first two weeks of care; treatment of Ms. Weller is elective rather than medically necessary; and continuation of care for injuries sustained on April 4, 1976 is inappropriate at this point. After a thorough review of the record and based on the medical testimony cited here and in our discussion of permanent disability above, we find that the trial court was manifestly erroneous in its finding that the appellant was entitled to the ordered medical benefits payments.

CONCLUSION
We reverse the judgment of the trial court. All costs of this appeal are to be borne by the appellee.
REVERSED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record is inconsistent as to the exact date of the injury. Both April 1, 1976, and April 2, 1976, are reported as the date of the injury. However, more reliable evidence supports the conclusion that the injury occurred on April 1, 1976.
[3] Appellee was carrying a five-gallon jar of vinegar at the time of the fall, but was able to throw it as she fell so that it did not land on her.
[4] Rockwood Insurance Company was eventually placed into liquidation and the Louisiana Insurance Guaranty Association (hereinafter referred to as "LIGA"), the statutory successor to the insolvent Rockwood Insurance Company, took over the handling of the claim.
[5] Weller v. Brown, 398 So.2d 551 (La.App. 1st Cir.1979).
[6] He is referencing the course of intensive physiotherapy previously initiated at Earl K. Long Hospital.
[7] Ms. Weller previously sustained damage to her back as a result of an automobile accident. This fact is of no moment at this time, as no issue has been raised on appeal as to causation of her injury/pre-existing condition.
[8] The judgment reads as follows:

After a review of the evidence and the argument of the parties, the court finds that Mae Weller is not able to return to employment at this point in time. The court finds that because of plaintiff's age, education, job history and continuing physical symptomology that she remains totally and permanently disabled.