I/WALTZER, J.,
dissents with reasons.
The majority affirms the trial court’s award of temporary total disability benefits and supplemental earning benefits to Marty Bruce for an injury to his back, although the record contains no credible *671 evidence from which a reasonable factfin-der could have concluded that the alleged disability resulted from the May 1998 work related accident.
Marty Bruce injured his back in May 1998. Lakewood, or rather its insurer, paid Bruce compensation benefits and paid for medical treatment from May 1998 until July 1998, when Bruce, upon his doctor’s advice returned to work. In August 1999 Bruce stopped working for Lakewood and sought compensation benefits. Lakewood paid benefits from August 1999 until February 2000.
STATEMENT OF FACTS AND HISTORY OF THE CASE
On 2 May 1998 Marty Bruce injured his back. At the time of the injury, Lakewood employed Bruce as a bartender. He reported the injury to his employer that day and continued to work. A few days later, Bruce sought treatment from Dr. Arthur Axelrod, an orthopedist. Sometime thereafter, he saw a chiropractor for treatment.
On 28 May 1998, Bruce began treating with Dr. Robert Steiner, M.D., a board certified orthopedist, for his back pain. At the initial visit Bruce reported to U>r. Steiner that he had suffered a similar injury to his back in September 1997 and had treated with Dr. Axelrod. After a thorough examination and obtaining x-rays of Bruce’s back, Dr. Steiner concluded that Bruce had sustained a lumbar strain and suffered from some degenerative changes. He prescribed physical therapy and pain medication and did not release him to return to work at this time. Dr. Steiner saw Bruce again on 18 June 1998, examined him, released him to return to work on a limited basis. Bruce returned to work at Lakewood Country Club. Bruce saw Dr. Steiner again on 2 July 1998 and 23 July 1998. After examining Bruce on 23 July 1998, Dr. Steiner released him to return to work at Lakewood without any limitations. Dr. Steiner opined that Bruce had reached maximum medical improvement. Dr. Steiner examined Bruce again on 20 August 1998. When Dr. Steiner saw Bruce on 24 September 1998, Bruce reported that he had experienced a “flare up” of the pain in his back. Dr. Steiner attributed this pain to the preexisting degenerative condition and not to the May accident. Dr. Steiner saw Bruce on 22 October 1998, and Bruce reported only occasional back pain, which Dr. Steiner attributed to the degenerative disc disease.
On 25 March 1999, Bruce reported, for the first time during his treatment, to Dr. Steiner that he had pain and discomfort in his legs, which Dr. Steiner attributed to nerve root irritation, caused by the preexisting condition and not related to the May accident. On 30 March 1999, Bruce underwent an MRI of his lumbar region. On 15 April 1999, Dr. Steiner reviewed the results with Bruce and opined that Bruce suffered from multilevel degenerative lumbar disc disease. Dr. Steiner recommended Aleve, exercises, and a 20 pound lifting restriction. Dr. Steiner saw Bruce one last time on 20 January 2000. He found no changes in Bruce’s condition and disagreed with Dr. John Logan’s recommendation that Bruce undergo further diagnostic testing including a discogram and intradiscal electrothermal therapy. Moreover, he opined that any injury suffered by Bruce in the May 1998 accident had fully resolved itself, that Bruce was capable of | ¡¡performing his duties as a bartender with certain limitations and that any problems with which Bruce now suffered were not caused by the May accident but by the degenerative disc disease.
Dr. Sabrina Schrader, D.O., began treating Bruce in May 1999. Dr. Schrader completed a residency in family practice in 1995 and is board certified in family practice. She has never been qualified as an *672 expert in any area in any court. Although she refers her patients with back or neck abnormalities to orthopedists for treatment, she testified that she would not necessarily defer to a treating orthopedist with regard to opinions pertaining to cause of those abnormalities. She testified, by deposition only, that her decision regarding deference to a treating orthopedist’s opinion would depend on the individual orthopedist. She considered herself equally qualified to render an opinion in the area of orthopedics as a board certified orthopedist. However, she then qualified that, “In this case I believe I am.” Moreover, she admitted she had access to Dr. Steiner’s records of Bruce’s treatment, but she did not review them, and she admitted that a review of Bruce’s prior medical records would help in his treatment and in formulating her opinions. Dr. Schrader admitted she knew that Bruce had treated for back injuries with several different practitioners, but she never obtained or reviewed his prior medical records, although she admitted their usefulness. She testified that she based her opinions solely on the history given by Bruce. She opined that his inability to work as a bartender was more likely than not related to his May 1998 accident, but she admitted that she had not reviewed all useful and relevant information and records in reaching this conclusion. Moreover, she testified that she had nothing with which to dispute or negate Dr. Steiner’s conclusion that Bruce had reached maximum medical improvement in July 1998 from any injury sustained in the May 1998 accident. Furthermore, Dr. Schrader testified that she had no reason to dispute or negate Dr. Steiner’s opinion that Bruce’s current problems are caused by [4his degenerative disc disease and a reported incident in September 1998, a condition materializing after Bruce reached maximum medical improvement and returned to work. Dr. Schrader admitted that she based her opinion principally on her general distrust of Dr. Steiner’s opinions.
On 11 May 1999 Dr. Schrader first saw Bruce who reported low back and hip pain but denied any radiating or leg pain. Bruce reported to Dr. Schrader that he had suffered a work related accident in May 1998. He also reported to Dr. Schrader that he had suffered a similar accident and injury in 1997 and had treated with Dr. Axelrod. He reported treating with Dr. Axelrod, a chiropractor and Dr. Steiner after the May 1998 accident. He also reported that he had x-rays and physical therapy immediately after the accident. He advised Dr. Schrader that he had an MRI in March 1999 and gave her a copy of the report. Dr. Schrader recommended physical therapy. Dr. Schrader next saw Bruce on 6 July 1999 and again on 26 July 1999, with no significant findings. She ordered x-rays which she did not believe revealed any apparent problems. She testified that he was improving but issued him a stop work order from his job as a bartender.[1] She believed his current problems were muscular, caused by poor posture and obesity. She saw him next on 16 August 1999 and again opined that he was improving. On 18 October 1999 Dr. Schrader saw Bruce again. Bruce reported that he had fallen and hurt his ankle, and for this reason he was unable to consider returning to work. Between the August visit and the October visit Bruce underwent a nerve root injection by Dr. Aprill, a radiologist. Dr. Schrader noted a marked improvement in *673 Bruce’s complaints of pain. However, she discussed Bruce seeing Dr. John Logan, an orthopedist, for additional treatment. Dr. Schrader saw Bruce on 2 November 1999 and 1 December 1999, with no changes. Bruce reported that he had stopped attending physical therapy. On 15 December 1999 Bruce saw Dr. Schrader and | ¡¿reported a worsening of his condition after he bent to lift a small box. Dr. Schrader last saw Bruce on 17 January 2000. She made no additional findings but she opined that he had not reached maximum medical improvement, but Bruce discontinued treatment with her.
On 13 August 2000 Dr. Lee Moss, M.D., a board certified orthopedist, examined Bruce for an independent medical examination to determine whether he needed additional treatment. Dr. Moss opined that Bruce aggravated a pre-existing condition with the May 1998 accident. He testified that subsequent treatment had returned Bruce to where he was prior to the May 1998 accident. Moreover, he believed that Bruce had reached maximum medical improvement.
Bruce received compensation benefits from May 1998 until July 1998 when he returned to work at Lakewood. He worked at Lakewood from July 1998 until August 1999, when he began to receive compensation benefits. From August 1999 until February 2000, he received compensation benefits. During these two periods of compensation, Bruce worked as an agent for Holiday Travel. He failed to notify Lakewood or its insurer of this additional income, even when specifically questioned on various forms and in his deposition. Specifically, Bruce denied any other employment on his reports of income for the two periods for which Lakewood paid compensation benefits. However, at trial, when Lakewood confronted him with Holiday Travel’s records, Bruce admitted both employment and earnings during the two periods of disability. During his testimony at trial, he admitted several falsehoods, including his employment with Holiday Travel.
On 8 May 2000 Lakewood filed a disputed claim form denying Bruce’s disability. On 26 March 2001, the trial court conducted a trial of the matter. On 18 April 2001, the trial court rendered a judgment, finding that “As a result of the May 2, 1998 accident, employee’s low back was injured resulting in a compensable | ^disability.” In her reasons for judgment, the trial court stated, “Employee’s back injury was the result of the job injury, whether the direct cause or the aggravation of a non-systematic [sic] condition.”
Lakewood appeals, arguing that Bruce failed to prove that the May 1998 accident caused his disability. Bruce answered the appeal arguing that the trial court erred in failing to award penalties and attorneys fees.
DISCUSSION
Lakewood and its insurer argue that the trial court erred in finding that the May 1998 accident caused any continuing disability suffered by Bruce. Bruce testified that his back pain began in May 1998. He testified that he is unable to work.
The trial court awarded Bruce temporary total disability benefits from February 2000 until 28 December 2000.[2] Temporary total disability benefits are owed pursuant to LSA-R.S. 23:1221(1).
Bruce admitted he worked as an agent. for Holiday Travel during this period of temporary total disability. With this admission, we believe the trial court erred in awarding Bruce temporary total disability *674 benefits. LSA-R.S. 23:1221(l)(b) provides, in pertinent part,
For purposes of Subparagraph (a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
Moreover, recovery of temporary total disability benefits hinges on meeting the onerous burden of proof provided in LSA-R.S. 23:1221(l)(c). Coats v. American Telephone and Telegraph Co., 95-2670, p. 8 (La.10/25/96), 681 So.2d 1243, 1247. LSA-R.S. 23:1221(l)(c) provides,
|7For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, including but not limited to any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
Bruce worked for Holiday Travel both before the alleged May 1998 accident and after the accident. He never stopped working as a travel agent during any period of alleged disability. He offered no evidence to support his claim that he was “physically unable to engage in any employment.” Dr. Sabrina Schrader testified that she prescribed that Bruce cease working as a bartender for a period of time. She never opined that he was unable to engage in any employment. Moreover, both Dr. Steiner and Dr. Schrader believed Bruce could work with certain restrictions. No one, including Bruce, testified that he was physically unable to engage in any employment. The trial court erred in awarding temporary total disability benefits.
The court must next consider whether Bruce proved entitlement to supplemental earnings benefits, as set forth in LSA-R.S. 23:1221(3).
In order to prevail on such a claim, the injured employee must prove by a preponderance of the evidence that the work-related injury has resulted in his or her inability to earn wages equal to ninety percent or more of the wages he or she was earning at the time of the injury. Once the plaintiff has met this initial burden of proving entitlement to supplemental earnings benefits, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee’s or the employer’s community or reasonable geographic region.
Miller v. Roger Miller Sand, Inc., 94-1151, p. 7 (La.11/30/94), 646 So.2d 330, 335-36. [Citations omitted.]
Lakewood argues that Bruce failed to offer any evidence that the May 1998 accident caused his alleged disability. An employee in a worker’s compensation action has the burden of establishing a causal link between the accident and the subsequent *675 disabling condition. Peveto v. WHC Contractors, 93-1402, p. 2 (La.1/14/94), 630 So.2d 689, 691, citing Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.9/10/85).
In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
Preexisting disease or infirmity of the employee does not disqualify a claim if the work injury aggravated, accelerated or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Correl-atively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee’s work injury is presumed to have aggravated, accelerated, or combined with his preexisting disease or infirmity to produce his disability.
Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. In other words, in order for the party denying the existence of the presumed causal relationship to prevail on the issue, he must produce evidence and persuade the trier of fact that it is more probable than not that the work-injury did not accelerate, aggravate or combine with the preexisting disease or infirmity to produce his disability.
Walton, supra at 324-25. [Citations omitted.]
Each testifying doctor agreed that Bruce suffered from a degenerative disc j adisease that pre-dated his May 1998 accident. Moreover, in September 1997, Bruce suffered an injury to his back. Bruce testified that he recovered after the September 1997 injury to his back. Dr. Steiner, Dr. Schrader and Dr. Moss opined that this injury and the subsequent injury in May 1998 were manifestations of his pre-existing degenerative disc disease. The record does not establish that Bruce was in good health and symptom free before the May 1998 accident.
Moreover, Bruce returned to work in July 1998 at Lakewood and continued in this employment until August 1999. Although he continued to periodically seek medical treatment for back pain, neither Bruce nor any other witness testified that he was unable to perform the job at Lakewood. He worked without restriction for nearly one year after the alleged accident. The record does not establish that his disabling condition continuously manifested itself.
Therefore, I do not believe the presumption applies. Thus, Bruce bears the bur *676 den of proving by a preponderance of the evidence that the lumbar strain in May 1998 caused his alleged disability.
Bruce sought treatment from several doctors after the May 1998 injury. He saw Dr. Arthur Axelrod, an orthopedist, immediately after the May 1998 accident. He saw him only once. He sought treatment from Dr. Bryant, a chiropractor. Eventually, he began treating with Dr. Robert Steiner, M.D., a board certified orthopedist, in May 1998. Dr. Steiner diagnosed a lumbar strain and certain degenerative changes. Dr. Steiner testified that Bruce reached maximum medical improvement in July 1998, but that he suffered a “flare up” in September 1998. Dr. Steiner testified that the degenerative disc disease caused the “flare up” in September. He did not attribute this condition to the May 1998 accident.
Dr. Sabrina Schrader, D.O., a board certified family practitioner, began treating Bruce in May 1999. Although she saw improvements in Bruce’s complaints of pain, she prescribed that he stop working as a bartender in July 1999, |inbecause she feared he might suffer a setback if he continued working at Lakewood. Dr. Schrader also opined that the May 1998 accident caused the disability. However, she admitted that she had not treated Bruce until May 1999, had not reviewed any of his prior medical records (except an MRI report), and generally deferred to the opinions of specialists and treating physicians. Dr. Schrader based her opinion entirely on Bruce’s statements and her general view of Dr. Steiner’s methods. I find Dr. Schrader’s opinion regarding the cause of Bruce’s symptoms totally lacking in a proper foundation. Moreover, the testimony of a specialist is entitled to greater weight when the subject at issue concerns the particular field of the specialist’s expertise. Weller v. Brown, 97-2155, p. 9-10 (La.App. 1 CSr. 11/6/98), 724 So.2d 230, 234.
Dr. Schrader referred Bruce for treatment with Dr. Aprill, a radiologist, and Dr. Logan, an orthopedist. However, neither Dr. Aprill nor Dr. Logan testified for Bruce and expressed an opinion on the extent or cause of Bruce’s current disability-
Bruce argues that Dr. Lee Moss’ opinion proves that the May 1998 accident caused his disability. Dr. Moss, a board certified orthopedist, examined Bruce once in August 2000, pursuant to a court ordered independent medical examination to determine the need for further treatment. Dr. Moss testified, by deposition, that he believed Bruce aggravated a pre-existing medical condition. However, Dr. Moss testified further that he believed Bruce had reached maximum medical improvement and with treatment had been restored to his pre-accident condition. Dr. Moss did not contradict Dr. Steiner’s testimony that Bruce reached maximum medical improvement in July 1998 and that he then had a “flare up” of the pre-existing degenerative disc disease in September 1998, unrelated to the May 1998 accident. Moreover, the testimony of an employee’s treating physician should be afforded more weight than that of an examining physician. Weller, supra 97-2155, In at p. 9-10, 724 So.2d at 234.
The record contains no reasonable factual basis for concluding that Bruce’s inability to earn ninety percent of his pre-injury wages was caused by the May 1998 accident. Bruce stopped working in August 1999, nearly one year after he had returned to work and more than a year after the alleged accident. However, he continued to work as a travel agent and failed to report this income to either Lakewood or its insurer. Moreover, he testified at trial that he had not sought other employment, *677 although he stopped treating with Dr. Schrader in January 2000. Dr. Schrader testified that she believed Bruce could work with certain restrictions as early as December 1999. Dr. Schrader also testified that prior to December 1999, Bruce’s inability to work stemmed mainly from a leg injury unrelated to the back injury. Furthermore, Bruce testified in his deposition that he did not want to work. Therefore, the trial court erred in finding that the accident caused Bruce’s alleged disability.
CONCLUSION
For the above reasons, I believe the trial court erred in awarding temporary total disability benefits to Bruce for the period from February 2000 until December 2000 and supplemental earnings benefits from December 2000. Therefore, I would reverse the judgment of the trial court awarding benefits.

. Bruce's first child was bom in August 1999, and he helped care for the child while his wife worked.

. Specifically, the trial court awarded Bruce "SEB at the full TTD rate.”