666 So.2d 387 (1995)
Thelma Robyn STARKS
v.
UNIVERSAL LIFE INSURANCE COMPANY.
No. 95 CA 1003.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
Writ Denied March 8, 1996.
*389 Anthony P. Lewis, Thibodaux, for Plaintiff/Appellant, Thelma Robyn Starks.
Lynn L. Lightfoot, New Orleans, for Defendant/Appellee, Universal Life Insurance Company.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a judgment of the Office of Workers' Compensation.

FACTS
On January 29, 1992, Thelma R. Starks, plaintiff, who was employed as an insurance collector for Universal Life Insurance Company (Universal), slipped and fell on the porch of a client and landed on her buttocks. As a result of the fall, plaintiff sustained injuries to her back, legs, and shoulder. Plaintiff was paid workers' compensation benefits from the date of the accident through October 21, 1992.
In May, 1994, Dr. Dexter Gary found that plaintiff had a central disc protrusion at the L-5 level. He, therefore, recommended that plaintiff undergo a discectomy, but Universal did not approve payment for the surgery.
On June 21, 1994, plaintiff filed a Disputed Claim for Compensation (1008 form) with the Office of Workers' Compensation, seeking weekly compensation benefits and medical benefits for payment of the surgery. Universal answered, alleging that plaintiff's claim for weekly compensation benefits had prescribed and, alternatively, that plaintiff was not disabled.
On January 13, 1995, trial on the merits was held. At the trial, the parties entered into the following stipulations:
(1) Plaintiff's average weekly wage at the time of the accident was $320.23 with the corresponding Louisiana Workers' Compensation Rate of $213.59.
(2) Plaintiff has been paid compensation benefits from January 29, 1992, until October 21, 1992, for the total of $7,409.95 in weekly compensation benefits.
(3) The total amount of medical benefits that have been paid by plaintiff's employer to date is $8,012.61.
(4) Plaintiff was in the course and scope of her employment with Universal Life Insurance Company on January 29, 1992.
On January 24, 1995, the hearing officer rendered judgment in favor of Universal. The hearing officer found that plaintiff's claim for weekly compensation benefits had prescribed, that plaintiff was not entitled to temporary total disability benefits, and that Universal was not arbitrary and capricious in denying plaintiff benefits. Plaintiff was ordered to pay all costs of the proceedings, and her claims against Universal were dismissed with prejudice. Plaintiff appealed from this adverse judgment, assigning the following specifications of error:
(1) The hearing officer erred in finding that plaintiff's claim for workers' compensation had prescribed.
(2) The hearing officer erred in finding that plaintiff was not entitled to temporary total disability benefits.
(3) The hearing officer erred in finding that defendant, Universal Life Insurance Company, was not arbitrary and capricious.
(4) The hearing officer erred in dismissing plaintiff's motion to appeal his ruling in forma pauperis.

PRESCRIPTION OF CLAIM FOR COMPENSATION BENEFITS

A. Claim for Weekly Compensation Benefits
Prescription of a claim for workers' compensation benefits is addressed in LSA-R.S. 23:1209 A, which provides as follows:
In case of personal injury, including death resulting therefrom, all claims for *390 payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. (Footnote omitted). (Emphasis added).
Development of the injury has been equated in the jurisprudence with development of the disability. Holmes v. Baton Rouge Water Works Company, 558 So.2d 629, 631 (La. App. 1st Cir.1990). Disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner. Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122, 124 (La.1986). LSA-R.S. 23:1209 B requires that a claim for a developing disability be instituted within two years from the date of the accident that causes the developing disability. Lynn v. Berg Mechanical, Inc., 582 So.2d 902, 910 (La.App. 2nd Cir.1991).
In the instant case, Universal paid plaintiff weekly compensation benefits until October 21, 1992. According to LSA-R.S. 23:1209 A, plaintiff had one year from that last payment, or until October 21, 1993, to timely file a claim for weekly compensation benefits. Plaintiff's claim was not instituted until June 21, 1994, at which time her claim had prescribed.
However, plaintiff seeks to invoke the developmental theory set forth in the last sentence of LSA-R.S. 23:1209 A to show that her claim had not prescribed. Plaintiff argues that, although she knew that she had a disc problem prior to the one-year prescription date, it was not made clear to her until May of 1994 that surgery was needed. Based on the developmental theory, plaintiff contends that her claim would not have prescribed until May of 1995, one year from the discovery of her injury and, thus, her claim was timely filed in June of 1994. However, the statute clearly provides that the developmental theory cannot be applied unless the claim is filed within two years of the date of the accident. In this case, because plaintiff's claim was not filed within two years of the date of the accident, the developmental theory is inapplicable. See Lynn v. Berg Mechanical, Inc., 582 So.2d at 910. The hearing officer correctly determined that plaintiff's claim for weekly compensation benefits had prescribed.

B. Claim for Medical Benefits
Prescription of claims for medical benefits is addressed in LSA-R.S. 23:1209 C, which provides as follows:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
Thus, plaintiff's claim for medical benefits for the recommended surgery would prescribe three years from the date of the last payment of medical benefits. The record reveals that Universal was still paying plaintiff's medical expenses as late as the date of trial. Therefore, plaintiff's claim for medical benefits has not prescribed.
However, with regard to plaintiff's claim for medical benefits, our inquiry does not end *391 here. The hearing officer determined that plaintiff was not entitled to medical benefits because she was not suffering from a disabling condition caused by the January 29, 1992, accident. Rather, he found that plaintiff was suffering from a preexisting condition, which was not worsened by the January 29, 1992, accident. Implicit in these findings is a finding that plaintiff's requested medical benefits were not related to or necessitated by the January 29, 1992, accident. On appeal, we must determine whether the hearing officer erred in these findings.
A workers' compensation plaintiff is required to establish her claim to a reasonable certainty and by a preponderance of the evidence. The award of medical expenses must be limited to those expenses shown to have been made necessary by the work-related accident. An injured employee is not entitled to recover for medical expenses where she fails to substantiate her claim. Lee v. East Baton Rouge Parish School Board, 623 So.2d 150, 157 (La.App. 1st Cir.), writ denied, 627 So.2d 658 (La.1993); City of Baton Rouge v. Noble, 535 So.2d 467, 473 (La.App. 1st Cir.1988), writ denied, 539 So.2d 632 (La.1989).
The question of whether the claimant is entitled to medical benefits is ultimately a question of fact, and the trial court's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71, 74 (La.App. 3rd Cir.1993); Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 (La.App. 3rd Cir.), writs denied, 606 So.2d 541, 542 (La.1992). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La.1993); Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Harris v. Bronco Construction Company, 93-2139, p. 5 (La.App. 1st Cir. 10/7/94); 644 So.2d 805, 807, writ denied, 94-2740 (La. 1/6/95); 648 So.2d 931.
In the instant case, the record contains the testimony of plaintiff, the deposition testimony of Drs. Dexter Gary and Coleridge Franklin, the medical reports of Drs. Gordon P. Nutik and A. Delmar Walker, Jr., and a copy of the court record in a previous lawsuit filed by plaintiff in December of 1986, arising from a work-related accident.
Dr. Coleridge Franklin, a family practitioner, testified, via deposition, that he first saw plaintiff on July 25, 1991, when she consulted him for a physical examination. The only positive findings resulting from the examination were decreased flexibility of her spine and an inability to dorsiflect her left arm. Dr. Franklin indicated that these findings were the result of a previous injury.
The next occasion on which Dr. Franklin treated plaintiff was January 29, 1992, following the accident involved herein. Dr. Franklin examined plaintiff and found tenderness over her right hip and left buttock. He then diagnosed sciatica and a contusion to her buttocks and treated her with muscle relaxers.
On February 5, 1992, and February 12, 1992, plaintiff returned to see Dr. Franklin. He subsequently changed her pain medication and ordered a CT-scan of the lumbar spine. The CT-scan revealed that plaintiff had a soft tissue mass at L5-S1, and it was found to be either a herniation of the nucleus pulposus or a bulge on her annulus. At that time, Dr. Franklin referred plaintiff to an orthopedist, Dr. Dexter Gary.
Dr. Dexter Gary testified, via deposition, that he treated plaintiff on February 21, 1992. Plaintiff informed him that she had been hospitalized in April of 1985 for back strain and was treated by Dr. Neil Maki. Dr.Gary stated that plaintiff reported no further *392 problems until January of 1992. After examining plaintiff, Dr. Gary diagnosed low back pain, lumbar disc herniation by report, and symptoms compatible with sciatica and recommended that plaintiff not return to work.
On March 23, 1992, Dr. Gary saw plaintiff for complaints of low back pain, left hip pain, left leg pain, and left shoulder pain. Dr. Gary reviewed x-rays and a CT-scan which had been performed after the 1985 injury, which revealed a disc protrusion at the L-5 level. According to Dr. Gary, the 1992 CT-scan revealed similar findings, but the protrusion was slightly larger on the 1992 CT-scan. Dr. Gary diagnosed a herniated disc at L-5, with acute back pain and left sciatica.
On April 3, 1992, plaintiff received an epidural steroid injection, which Dr. Gary expected would relieve her symptoms without surgery. However, on April 13, 1992, plaintiff reported to Dr. Gary that the injection had not improved her condition. In May of 1992, Dr. Gary informed plaintiff that, if her symptoms were not alleviated, he would recommend that she undergo a discectomy. However, plaintiff was not interested in surgery at that time.
On June 26, 1992, plaintiff consulted Dr. A. Delmar Walker, Jr. for an evaluation of her complaints. He reviewed the results of a lumbar myelogram and CT-scan, which previously had been performed, and determined that plaintiff had mild degenerative bulging of the L-5 disc. However, he indicated that these findings were expected in a patient of plaintiff's age and size.[2] Dr. Walker found no evidence of pressure on the nerve roots or any deformity of the thecal sac which would indicate expected relief from surgical intervention. Dr. Walker also found that there was no asymmetry or protrusion of discs beyond 1-2 millimeters to support the diagnosis of a traumatic injury to this area. Dr. Walker felt that plaintiff exhibited "obvious pre-existing abnormalities" without any medical evidence to support the diagnosis of a traumatic disc herniation. In fact, Dr. Walker opined that the deformity of the L-5 disc was actually less than it was in 1985.
On July 27, 1992, plaintiff returned to Dr. Gary who scheduled a second epidural steroid injection. On August 10, 1992, Dr. Gary felt that plaintiff had reached maximum medical improvement and recommended exercise and weight loss. He did not feel that surgical intervention was indicated at that time and discharged plaintiff with a 10% whole body permanent physical impairment.
On September 11, 1992, Dr. Gary found that plaintiff had the same disc protrusion which existed in 1985, but he noted that the 1992 protrusion was slightly larger. Dr. Gary felt that surgery was not indicated and that plaintiff's condition would improve with time, as it had done in 1985.
In May of 1994, an MRI and EMG studies were performed. Dr. Gary explained that the EMG studies showed left L-5 and S-1 nerve root impingement, and the MRI showed a central disc protrusion at the L-5 level. Because plaintiff's condition had not improved and because there had been a progression on the EMG studies, Dr. Gary recommended that plaintiff schedule surgery.
On June 14, 1994, Dr. Gordon P. Nutik, orthopedic surgeon, examined plaintiff. In his report, Dr. Nutik noted that plaintiff's low back examination revealed "notable inconsistencies." Dr. Nutik reported that plaintiff might have sustained a soft tissue strain about the low back, which is superimposed on a pre-existing disc abnormality at the L-5 level which was observed on diagnostic testing following an injury in 1985. Dr. Nutik indicated that plaintiff did not exhibit any objective clinical findings to indicate nerve root irritation which he could relate to the January 29, 1992, fall. Dr. Nutik felt that surgery was not indicated and recommended that plaintiff lose weight and perform low back strengthening exercises.
On July 11, 1994, plaintiff was seen again by Dr. Walker. After examining plaintiff, Dr. Walker still felt that she was a poor surgical risk because of her pre-existing abnormalities at the L-5 level, which he interpreted to be only borderline abnormalities. Dr. Walker noted that plaintiff is obese and *393 had not participated in any exercise program expected to improve her symptoms.
After reviewing all of the evidence, the hearing officer found that plaintiff was not suffering from a disabling condition caused by the January 29, 1992, accident, and that, therefore, the requested medical benefits were not related to or necessitated by the January 29, 1992, accident. The hearing officer found that plaintiff suffered from a preexisting condition, which was not worsened by the January, 1992, accident.
Our review of the record in this matter reveals that there is a reasonable basis for the hearing officer's findings. The majority of the medical evidence indicates that plaintiff's condition following the January 29, 1992, fall, was essentially as it existed following the 1985 injury. The record supports the hearing officer's finding that plaintiff failed to prove by a preponderance of the evidence her entitlement to medical benefits. Therefore, the hearing officer's finding is not manifestly erroneous.

PENALTIES AND ATTORNEY'S FEES
Plaintiff contends that the hearing officer erred in failing to find Universal arbitrary and capricious for refusing to provide plaintiff with physical therapy.
At all times pertinent hereto, LSA-R.S. 23:1201 E provided for the imposition of a 12% penalty on compensation benefits which the employer or insurer fails to pay timely.[3] Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4th Cir.1993).
Furthermore, LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter ... shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject... insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim.
This statute requires a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Hayes v. Louisiana Risk Management, 93-1144, p. 4 (La.App. 3rd Cir. 4/6/94); 635 So.2d 591, 593, writ denied, 94-1020 (La. 6/17/94); 638 So.2d 1097. See Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).
The statutes providing for penalties and attorney's fees, which are penal in nature, must be strictly construed. Hayes v. Louisiana Risk Management, 635 So.2d at 592; Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74. An assessment of penalties and attorney's fees is proper unless the employee's rights to benefits are reasonably controverted. Schmitt v. City of New Orleans, 632 So.2d at 374. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3rd Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and *394 compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed in the absence of manifest error. Johnson v. Vinson Guard Service, Inc., 92-2187 (La. App. 1st Cir. 3/11/94); 636 So.2d 914, 916, writ not considered, 94-1661 (La. 9/2/94); 642 So.2d 1280; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989).
In the instant case, the hearing officer's reasons for judgment provide, in pertinent part, as follows:
Plaintiff at trial brought up an issue that defendant has failed to provide plaintiff with physical therapy. Ms. Starks testified that Dr. Walker in June 1994, had recommended physical therapy. The only notation regarding that is in a June 1992 report by Dr. Walker. Dr. Gary chose to continue treating Ms. Starks with steroid injection and recommendation for surgery. The only physical therapy recommended by plaintiff's treating physician was Dr. Franklin. When it was recommended by either Dr. Franklin or Dr. Gary, it was authorized and paid. This simply is a disagreement between the doctor reviewing Ms. Starks' record concerning the recommendation for surgery, and her treating orthopaedist, Dr. Gary. Defendant has continued authorization and payment of treatment for Dr. Franklin and Dr. Gary to the date of trial. Accordingly, this Court finds that defendant was not arbitrary and capricious and no attorney's fees and penalties are awarded plaintiff in this matter.
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the hearing officer's finding that Universal was not arbitrary and capricious. Accordingly, we find no manifest error in this finding.

RIGHT TO PROCEED IN FORMA PAUPERIS
LSA-C.C.P. art. 5181 sets forth the privilege of litigating without prior payment of costs and provides, in pertinent part, as follows:
Except as provided in Paragraph B of this Article, an individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a judicial proceeding in any trial or appellate court without paying the costs in advance or as they accrue or furnishing security therefor.
The purpose of this article is to enable indigent persons to assert their causes in courts of this state. Benjamin v. National Super Markets, Inc., 351 So.2d 138, 140 (La.1977). This statutory privilege is to be interpreted liberally in favor of giving indigent persons their day in court. Benjamin v. National Super Markets, Inc., 351 So.2d at 140-41. In determining a litigant's qualification to proceed as an indigent, the courts have taken a realistic view as to the litigant's actual ability to advance or secure court costs out of net income available for that purpose, after payment of reasonable living expenses and debts, and in view of encumbered property other than a modest family residence. Benjamin v. National Super Markets, Inc., 351 So.2d at 141. A trial court is afforded wide discretion in determining whether or not to grant this privilege to litigate in forma pauperis. In the absence of clear abuse of that discretion, an appellate court does not disturb the trial court's finding. Benjamin v. National Super Markets, Inc., 351 So.2d at 142.
In the instant case, plaintiff contends that the hearing officer erred in denying her motion to appeal in forma pauperis. However, at this point in the proceedings, the costs have already been advanced by the plaintiff. Therefore, a determination on this issue is unnecessary.[4]

*395 CONCLUSION

For the foregoing reasons, the judgment of the hearing officer is affirmed in all respects. Costs of this appeal are assessed against plaintiff.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Plaintiff weighed 242 pounds, according to Dr. Walker's report.
[3] LSA-R.S. 23:1201 E provides, in pertinent part, as follows:

If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.
Prior to Acts 1992, No. 1003, effective January 1, 1993, this penalty provision was applicable to unpaid weekly compensation benefits only.
[4] We note that the more appropriate way to challenge the trial court's denial of a request to proceed in forma pauperis is to invoke this court's supervisory jurisdiction by applying for writs. See Benjamin v. National Super Markets, Inc., 351 So.2d 138 (La. 1977), where the plaintiff, after being denied his request to proceed in forma pauperis, filed for writs under the appellate court's supervisory jurisdiction and received expedited treatment. The court allowed him to proceed without paying costs in advance.