hMOON LANDRIEU, Judge Pro Tempore.
In this worker’s compensation case, plaintiff-appellant, Jennifer L. Regan (Re-gan) claims that she is entitled to workers’ compensation benefits from Lakeland Medical Center (Lakeland) for a mental injury caused by the sexual harassment inflicted on her by supervisor, John Lo-vern; denial of benefits; the taking of her personal items; the taking of her personal time off and sick time and retaliatory discharge by Lakeland.[1] The workers’ compensation judge granted judgment in favor of Lakeland finding that Regan’s injury was not compensable under the Workers’ Compensation Act. Regan takes this appeal from that judgment. For the following reasons, we affirm the judgment of the workers’ compensation court and award medical benefits for the plaintiffs on the job injury.
STATEMENT OF FACTS
Regan testified that the sexual harassment by her supervisor[2] which caused her mental injury began immediately after her employment as a Social Worker I at Lake-land on November 27, 2000. According to Regan, the acts of sexual ] ¡¡harassment by Lovern included invasions of her personal space, invasions of her office with a passkey, discussions of Lovern’s personal and sex life, unwanted and unsolicited gifts, and e-mails and cards of an explicit sexual nature.
The most disturbing act of alleged sexual harassment occurred on the night July 5, 2001 when Regan went to Lovern’s home at his request to retrieve a painting for her office. Regan testified that while at Lovern’s home, she took two pills given to her by Lovern which he told her were Xanex for anxiety. After taking the pills, Regan testified that she only remembered attending a class along with Lovern offered earlier in the evening at a co-worker’s home, being naked in Lovern’s bed, picking up her clothes off of the floor and getting dressed. Regan testified that when she went to work the next day Lo-vern bragged about their sexual encounter, but that she had no memory of it. She testified that when she told Lovern that she intended to report the incident, he threatened her with the loss of her job and her social worker’s license.
Regan testified that she believed the threat because in the past Lovern had bragged about being friends with several administrators at Lakeland and dating the CFO of Lakeland, who was also in charge of ethical complaints. Regan testified that she did not report the incident for fear of loosing her job and her license, and because she was ashamed, embarrassed, humiliated and had gone through the “worst experience a woman can possibly go through.” She testified that after the alleged rape in an effort to pursue a relationship with her, Lovern told her he loved |3her; sent her an increased number of emails, poems and gifts; threatened suicide on two occasions; and he claimed that he had no reason to live.
Regan testified that after a telephone call on December 19, 2001, in which Lo-vern informed her that he told the woman he was dating, Lakeland’s CFO, about *457 their alleged relationship, she along with several co-workers went to see Lakeland’s Director of Human Resources, Anne Rhodes. When asked on cross-examination if the telephone call of December 19, 2001 was the straw that broke the camel’s back, Regan testified that the situation with Lovern “had been building and building and building,” but that the telephone call on December 19, 2001 was “not the straw.”
Regan testified that during the meeting, Rhodes reviewed the e-mails, cards and poems that she had received “over an extended period of time” from Lovern, and took statements from her and her co-workers. She testified that Rhodes informed her that measures would be taken for her security including an escort to her car, walkie-talkies in the office, and all her telephone calls would be rolled over to a psychiatric tech’s office. Rhodes testified that she did tell Regan that these security measures would be taken, but that she never personally checked to see if they were in place.
On December 20, 2001, the day after her interview with Rhodes, Regan testified that she returned to work and suffered a panic attack. Regan testified that Rhodes witnessed the panic attack and she suggested that Regan take some time off from work and seek psychological treatment and counseling at Lakeland’s Rexpense.[3] Rhodes testified that she requested that Regan seek treatment because she was distraught, and told Regan that Lakeland would cover her medical expenses under FMLA (the Family and Medical Leave Act of 1993).
Regan sought treatment with Dr. Phuong Nguyen, a psychiatrist, on December 27, 2001. In his deposition of December 16, 2002, Dr. Nguyen testified that Regan complained that she was experiencing a lot of depressive anxiety symptoms such as feelings of being overwhelmed, frequent crying spells and panic attacks. Nguyen testified that he diagnosed Regan as having a panic disorder and an adjustment disorder with mixed emotional features, which meant she had symptoms of anxiety and depression. He described her as suffering from hypervigilance, fatigue, and a change in appetite and sleep patterns. Regan testified that she continued treatment with Dr. Nguyen until January 23, 2002 when she was released to return to work on a trial basis.
Regan testified that when she returned to work on January 23, 2002, she received a telephone call from Lovern asking her if she wanted him to continue as her clinical supervisor for her LCSW.[4] She testified that she declined his offer of supervision and went to see Rhodes, the Human Resources Director. Regan testified that after informing Rhodes of Lovern’s telephone call, security was informed and she gave a statement to the New Orleans Police Department. Regan testified that the telephone call completely set her back and caused her to suffer another panic attack while she was being questioned by the police. Regan | ^admitted on cross-examination that Lovern did not threaten to physically attack her during the call, but testified that she was leery of him because of her past experiences with him.
Rhodes testified that she told Regan that she expected her to return to work the next day, because she had a full release to duty. Instead, Regan took two sick days after which she received a letter informing her that she had voluntarily resigned her employment because she had *458 not told her supervisors that she would take two sick days in a row. Rhodes testified that it is Lakeland’s attendance absenteeism policy that if an employee does not call or show for two consecutive days then the employee is considered to have voluntarily resigned. Regan testified that she later received a letter of termination informing her that she had been terminated on January 23, 2002.
The Workers’ Compensation Court granted judgment in favor of Lakeland finding that because Regan’s sexual harassment occurred over a period of time it was “not compensable under workers’ compensation without an ‘unexpected and unforeseen event that occurs suddenly and violently.’ ” The court noted that the telephone call from Lovern was not an “event that was extraordinarily stressful from the point of an ordinary, reasonable person of usual sensibilities” without the prior ongoing sexual harassment and alleged sexual assault.
ASSIGNMENT OF ERROR
In her sole assignment of error, the appellant claims that the trial court erred in finding that she did not suffer a mental injury due to mental stress.
| (¿DISCUSSION
A trial court’s factual findings in a workers’ compensation case are subject to a manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. The appellate review of a factual finding is a two-part test in which the trial court must determine whether there is a reasonable factual basis in the record for the finding of the trial court, and whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). An appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). An appellate court may not substitute its own evaluations and inferences for the reasonable evaluations of credibility and inferences of fact by the trial court when there exits conflict in the testimony. The trial court’s choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Id. Therefore, the issue is not whether the workers’ compensation judge was right or wrong, but whether its factual conclusion was reasonable. Edwards v. Fischbach & Moore, Inc., 31,372 (La.App. 2 Cir. 12/9/98), 722 So.2d 344.
In the present case, Regan asserts that her mental injury was caused by the sexual harassment inflicted on her by supervisor, John Lovern.
La.R.S. 23:1021 defines a mental injury as:
Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless |7the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
In order to recover for a mental injury claim under the Workers’ Compensation Act, a claimant must satisfy both the general requirements of La. R.S. 23:1031 that the “personal injury by accident arise out of and in the course and scope of his employment” and the specific narrow circumstance allowing for recovery under La. R.S. 23:1021(7)(b) that there be clear and convincing evidence that “the *459 mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment.” Partin v. Merchants & Farmers Bank, 2001-1560 (La.3/11/02), 810 So.2d 1118. A mere showing that a mental injury was related to incidents occurring over an extended period of time is not enough to justify compensation. Sparks v. Tulane Medical Center Hosp. and Clinic, 546 So.2d 138 (La.1989). In the absence of an identifiable accident, general allegations of inability to work due to stress or tension caused by working conditions will not give rise to a compensable claim. Id. A determination of whether the stress is extraordinary is determined by whether an ordinary, reasonable person of usual sensibilities would find it extraordinary. Edwards, supra.
Regan asserts that the stress that caused her mental injury was the result of four unexpected and unforeseen events: an alleged rape by her supervisor on July 5, 2001, a conversation the next day with her supervisor about the alleged rape, a December 19, 2001 conversation with her supervisor in which he told her that he | Rinformed his girlfriend about their alleged relationship, and a January 23, 2002 telephone call from her former supervisor upon her return to work.
In her application for workers’ compensation benefits, LDOL form 1008, filed on February 2, 2002, Regan listed December 19, 2001 as the date of her injury/illness. On that form in the section entitled “Date, time and place of accident,” she wrote “Ongoing sexual harassment/abuse.”
In her deposition of September 5, 2002, Regan gave January 23, 2002 as the date of the incident that caused her mental injury. During that deposition when counsel for Lakeland asked what harmed her ability to return to work at Lakeland, Re-gan responded that it was the “leering; continuous sexual harassment; the inappropriate comments; being told that I could loose my license and I could loose my job.” On follow-up counsel for Lake-land asked, “Can you tell me what is the first thing that happened that started affecting your ability to work, maybe an exact incident?” Regan responded, “The leering, inappropriate stares and invading my personal space.” Later, Lakeland’s counsel again asked for an incident or an accident that harmed her or injured her so that she could not come back to work. Regan responded that it was the telephone call on January 23, 2002 from her former supervisor, Lovern. When asked, if the telephone call harmed her or upset her so that she could not work, Regan answered correct.
At trial, Regan testified that shortly after she began working at Lakeland in February 2000, she was questioned about Lo-vern’s behavior in an investigation | flbased on a complaint of his sexually harassing the staff.[5] When asked about her response to the questions asked during the investigation, she testified that she informed the investigators that she previously had a conversation with Lovern in which she told him that his continuously staring at her made her feel very uncomfortable. Regan testified that Lovern continued to stare at her after their conversation. She testified that after her clinical supervision began in February of 2001, she had weekly meetings with Lovern during which he would close the door, stare at her, talk about his personal history and things of a sexual nature, tell her that she was beautiful, and that she could be a star in his play. She also testified that Lovern would also *460 come into her locked office with a passkey and discuss his personal life.
Regan is unable to identify a single accident that was the result of a sudden, unexpected, and extraordinary stress related to and arising out of and in the course and scope of her employment that caused her mental injury and prevented her from being able to return to work. Instead, she describes four events that in actuality represent an ongoing pattern of sexual harassment. By Regan’s own admission, the following acts of sexual harassment by Lovern began immediately after her employment in November of 2000 and continued until her termination on January 23, 2002: Lovern leering at her; invasions of her personal space; invasions of her office; discussions of Lovern’s personal and sex life; an alleged rape; telephone | mcalls and the sending of an increasing number of unwanted and unsolicited gifts, e-mails and cards of an explicit sexual nature over an extended period of time.
Regan has not offered clear and convincing evidence that her mental injury was the result of a sudden, unexpected, and extraordinary stress related to her employment that an ordinary, reasonable person of usual sensibilities would find extraordinary, absent the prior ongoing pattern of sexual harassment. Regan’s mental injury fails to meet the narrow circumstances for recovery of a mental injury under the Workers’ Compensation Act. Therefore, we find that the trial court did not err in finding that the claimant did not suffer a mental injury compensable under the Workers’ Compensation Act.
Finally, Regan asks this Court to award her medical expenses for her work-related injury. The fact finder’s determination of an employee’s entitlement to medical benefits is a question of fact, which may not be disturbed by an appellate court unless it is clearly wrong or there is manifest error. Starks v. Universal Life Ins. Co., 95-1003 (La.App. 1 Cir.12/15/95), 666 So.2d 387. An employee’s right to reimbursement for medical expenses is separate and distinct from his right to compensation. An employee can recover medical expenses even though there is no recovery for compensation. Ridlen v. St. Charles Manor Nursing Center, Inc., 94-275 (La.App. 5 Cir.10/12/94), 644 So.2d 244. In order to recover medical expenses, the employee must prove to a reasonable certainty and by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by a work related injury. Id. See also, Patterson v. Long, 96-0191 (La.App. 1 Cir. 11/8/96), 682 So.2d 1327. An injured employee is not entitled to recover for medical expenses where she fails to substantiate a claim. Starks, supra. An employer has a statutory duty under La. InR.S. 23:1203 to furnish all necessary medical treatment for an employee’s work-related injury. Patterson, supra. An employee may recover reasonable medical expenses, past and future, which she incurs as a result of her injury. Augustus v. St. Mary Parish School Bd., 95-2498 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144. An injured employee is not entitled to an award for future medical expenses, but she reserves the right to claim future expenses when they are incurred. Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11. Medical expenses can be included in the judgment when the employee’s allegedly incurred expenses are supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Augustus, supra.
The Workers’ Compensation Court did not award Regan medical bene *461 fits. For the following reasons, we find that the trial court clearly erred in failing to find that Regan was entitled to medical benefits.
Regan suffered a panic attack at work caused by a phone call from her supervisor. Anne Rhodes, Lakeland’s Human Resources Director, testified that she witnessed the resultant panic attack, and requested that Regan seek treatment because she was distraught. Regan testified that Rhodes told her that Lakeland would pay for her medical expenses and that her leave of absence would not count against her sick leave and personal time off. Rhodes testified that she told Regan that her medical expenses would be covered under FMLA. Instead, Regan claims that her fifty-four hours of sick leave and twenty-seven hours of personal time were counted against her leave of absence, and therefore she has received no compensation.
|1gRegan sought treatment after her first panic attack as directed by Lakeland’s Director of Human Resources. Dr. Phuong Nguyen diagnosed Regan as having a panic disorder and an adjustment disorder with mixed emotional features. He testified that Regan’s illness caused problems in her interpersonal and occupational life, and that because of the problems he suggested that she should not continue to work. After being released to return to work on a trial basis, Regan suffered a second panic attack on the day she returned to work after receiving a telephone call from her former supervisor, which was also witnessed by Rhodes. Regan testified that she was assisted during the second panic attack by Dr. Fogarty, the medical director of the unit from whom she continues to receive treatment. Regan testified that as of the Friday preceding the trial, March 14, 2003, none of her medical bills had been paid by Lakeland. Regan testified that she submitted her medical bills to Rhodes twice, the first time by hand and the second time by certified mail. Rhodes testified that she submitted the paperwork for payment of the only two bills submitted to her by Regan.
Regan sought treatment for her panic attacks at the direction of Lakeland’s Human Resources Director. Lakeland has not provided sufficient contradictory evidence that the bills submitted to Rhodes by Regan are unrelated to the treatment she received for her panic attacks on the job. Therefore, the Workers’ Compensation Court clearly erred in not including Regan’s medical expenses in its judgment.
For the foregoing reasons, we affirm the judgment of the Workers’ Compensation Court’s finding that Regan’s mental injury was not compensable under the Workers’ Compensation Act, but remand this case for a determination of Impersonal time off and sick time compensation due to the plaintiff, as well as medical expenses incurred during her leave of absence.
AFFIRMED AND REMANDED.

. On January 16, 2003, the Office of Workers' Compensation Court (OWC) dismissed the retaliatory discharge and conversion of personal items claims due to a lack of jurisdiction.

. John Lovern was Regan's supervisor at work and her clinical supervisor to obtain her LCSW (Licensed Clinical Social Worker).

. Rhodes testified that the panic attack occurred on December 21, 2001.

. Lovern resigned from Lakeland on December 20, 2001.

. Anne Rhodes testified that the investigation determined that there was no sexual harassment found against Lovern, but he was given a verbal reprimand by Lakeland’s CEO.