MICHAEL E. KIRBY, Judge.
 

 Ijn this appeal, defendant, Greyhound Bus Lines, Inc. (Greyhound), appeals the workers’ compensation judgment in favor of plaintiff, Gregory Peters (Mr. Peters). For reasons that follow, we affirm.
 

 Greyhound first hired Mr. Peters as a driver in 1996. On February 1, 2007, a Greyhound bus driven by Mr. Peters departed New Orleans en route to Houston, Texas with a bus load of passengers. Along the way, Mr. Peters experienced problems with the side mirror of the bus. He stopped two to three times to adjust the side mirror before the regularly scheduled stop in Baton Rouge, Louisiana. While at the Greyhound station in Baton Rouge, several drivers looked at the mirror and assisted Mr. Peters in putting it in place. Believing the mirror was properly in place, Mr. Peters continued toward Houston.
 

 At some point, he experienced further trouble with the side mirror and made two to three more unscheduled stops. Mr. Peters stated the side mirror was important to “make the lane changes proper and safe.” After the continuing problems, Mr. Peters pulled in at a weigh station in Breaux Bridge, Louisiana, and contacted Greyhound to report the problem. Greyhound sent a vendor out to look at the side mirror. When the vendor was unable to fix the problem, Mr. Peters |2contacted Greyhound a second time and was told that a relief bus was being sent to pick up the passengers.
 

 In the interim, a different Greyhound bus picked up the other Greyhound drivers on board Mr. Peter’s bus. These drivers, known as cushioning drivers, were there to relieve Mr. Peters if the need arose during the trip. Mr. Peters testified he and the passengers waited for the relief bus “for a long period of time.” He stated the passengers became upset with the delay, especially after the cushioning drivers got onto another bus. He heard one passenger say, “I ought to pull that f — ing driver out of this seat and take this bus myself, I would drive this f-ing bus without that mirror.” Mr. Peters stated that one lady restrained one of the vocal passengers who moved towards the front of the bus. Next, Mr. Peters testified:
 

 So the longer the wait, the more the disturbance got on the bus. When I went to the restroom and I came back, the passenger who was making the most verbal threats at me, I[sic] was sitting in my seat after I came back. I saw this guy coming at me through the mirror, my body went into a state, it just froze and went into a state that was uncontrollable and I passed out.
 

 Mr. Johnson, a relief driver sent to the scene by Greyhound, testified that he arrived at the weigh station to find Mr. Peters shaking and unresponsive when his name was called. Considering Mr. Peters’ condition, Mr. Johnson contacted Greyhound and was instructed to transport the passengers to Houston on the bus previously driven by Mr. Peters. Mr. Johnson stated he adjusted the side mirror on the
 
 *1094
 
 regularly scheduled stops. Mr. Johnson stated that when he has had trouble with passengers in the past, he has called the police, to meet the bus at the next regularly scheduled stop.
 

 |sAn ambulance arrived and Mr. Peters was taken to Lafayette General Hospital. Mr. Peters testified that the doctor from Lafayette General Hospital stated that he had suffered a panic attack and prescribed medication, but also recommended that Mr. Peters obtain an EEG. Mr. Peters obtained the EEG from Tulane University Medical Center.
 

 Mr. Peters also sought treatment from Dr. Mendoza of the Veterans Administration Hospital. Dr. Mendoza, a licensed psychologist, testified that Mr. Peters has an anxiety disorder. It seems to have been upon Dr. Mendoza’s suggestion that Mr. Peters filed for workers’ compensation benefits. Dr. Mendoza stated Mr. Peters became upset because he wanted to return to work as a bus driver, but Dr. Mendoza believed further treatment was needed pri- or to Mr. Peters driving a bus again. Dr. Mendoza testified that because he could not support Mr. Peters returning to driving after the February 1, 2007 incident, he submitted a letter to Mr. Peters to use for workers’ compensation benefit purposes. Dr. Mendoza thought this would provide Mr. Peters with “some type of temporary compensation if [he’s] no longer able to work until such time as [he] could find a more appropriate line of work....” The letter stated that Dr. Mendoza believed that it was advisable that Mr. Peters not resume driving a bus at that time and for the foreseeable future due to the panic attack, possible paranoia and what appeared to be somatoform delusions. However, Dr. Mendoza opined that “this was a temporary thing, this wasn’t — I wasn’t declaring him permanently disabled.”
 

 Dr. Mendoza testified that if a passenger who had made verbal threats ran towards the front of the bus, “[i]t would have triggered an anxiety situation for me, if I thought someone was coming to attack me. So I think it would be reasonable that if someone fears that they may be attacked, any one of us, then I think that we |4would probably experience — most of us would experience some degree of anxiety.”
 

 Mr. Peters testified he previously received treatment after an incident arose in 2004 when he got sick while driving a Greyhound bus in Dallas, Texas. Mr. Peters stated he pulled over and contacted Greyhound to obtain a relief driver. The passengers became upset and began to threaten and curse at him. Mr. Peters received a diagnosis of a panic attack and received treatment at the Veterans Administration Hospital. Mr. Peters also testified that because he found no objective reason for his troubles driving, he believed someone put something in his food or drink or tampered with the bus. After a few months, Mr. Peters was cleared to return to work in January 2005. He noted his wife had lost her job, and they were being hassled by creditors prior to the panic attack in 2004.
 

 The workers’ compensation judge found Mr. Peters was “very credible.” The judge further found Mr. Peters suffered a compensable workers’ compensation job accident and rendered judgment in favor of Mr. Peters. The judgment awarded Mr. Peters temporary total disability benefits for the time period February 1, 2007 through September 21, 2007; ordered Greyhound to pay for specified medical treatment arising out of the February 1, 2007, job accident; found Greyhound was not unreasonable and denied the request for penalties; and ordered Greyhound to pay all costs of the litigation.
 

 
 *1095
 
 The standard for reviewing workers’ compensation claims was detailed in
 
 Regan v. Lakeland Medical Center,
 
 2003-1347 (La.App. 4 Cir. 3/24/04), 871 So.2d 453. Therein the Court stated:
 

 A trial court’s factual findings in a workers’ compensation case are subject to a manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing
 
 &
 
 Sheet Metal Works, Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551. The appellate review of a factual finding is a two-part test in which the trial court must determine whether there is a reasonable factual basis in the record for the finding of the trial court, and whether the record further establishes that the finding is not manifestly erroneous.
 
 Mart v. Hill,
 
 505 So.2d 1120 (La.1987). An appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993). An appellate court may not substitute its own evaluations of credibility and inferences of fact by the trial court when there exists conflict in the testimony. The trial court’s choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong.
 
 Id.
 
 Therefore, the issue is not whether the workers’ compensation judge was right or wrong, but whether its factual conclusion was reasonable.
 
 Edwards v. Fischbach & Moore, Inc.,
 
 31,372 (La.App. 2 Cir. 12/9/98), 722 So.2d 344.
 

 Regan,
 
 2003-1347, p. 6, 871 So.2d at 458.
 

 Greyhound assigns as error that “the trial [court] erred in finding that [Mr.] Peters met his burden of proving the occurrence of a job accident causing him ‘extraordinary stress’ when viewed under an objective basis causing a mental disability.”
 

 The Workers’ Compensation Act provides:
 

 Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
 

 La. R.S. 23:1021(8)(b). In this case, there is no dispute that Mr. Peters was acting in the course of his employment as a bus driver for Greyhound on February 1, 2007.
 

 | (iThe Act further provides:
 

 No mental injury or illness shall be com-pensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
 

 La. R.S. 23:1021(8)(d).
 

 In
 
 Regan,
 
 this Court stated that:
 

 In order to recover for a mental injury claim under the Workers’ Compensation Act, a claimant must satisfy both the general requirements of La. R.S. 23:1031 that the “personal injury by accident arise out of and in the course and scope of his employment” and the specific narrow circumstance ... that there be clear and convincing evidence that “the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment.”
 
 Partin v. Merchants & Farmers Bank,
 
 2001-1560 (La.3/11/02), 810 So.2d
 
 *1096
 
 1118.... A determination of whether the stress is extraordinary is determined by whether an ordinary, reasonable person of usual sensibilities would find it extraordinary.
 
 Edwards, supra.
 

 Regan,
 
 2003-1347, p. 7, 871 So.2d at 458-59.
 

 Greyhound cites several cases where the courts have found that the stress experienced by the claimant was not extraordinary. First, Greyhound cited
 
 Bryant v. Giani Inv. Co.,
 
 626 So.2d 390 (La.App. 4 Cir.1993). In that case, Ms. Bryant was accused by her employer of theft, screamed at, and called obscene names. Ms. Bryant obtained counseling and alleged she suffered post-traumatic stress disorder as a result of the incident. The Court noted there was no violence or threats of violence.
 
 Id.
 
 at 391. The Court found while it was not acceptable for an employer to shout obscene names at an employee, it is not altogether rare to have outbursts on the job and this episode could not be described as extraordinary.
 
 Id.
 
 at 393.
 

 |7Next, Greyhound cites
 
 McDonald v. American General Fire & Casualty Co.,
 
 570 So.2d 98 (La.App. 4 Cir.1990). Mr. McDonald alleged he was forced against his desk and spoken to directly in his face by his immediate supervisor. Mr. McDonald feared he would be fired or that he would be hit. After the confrontation, he began to shake uncontrollably and could not drive. Mr. McDonald obtained treatment and was diagnosed as having generalized anxiety disorder.
 
 Id.
 
 at 98-99. The Court affirmed the workers’ compensation judge’s finding that Mr. McDonald did not experience an unexpected or unforeseen event happening suddenly or violently. The workers’ compensation judge noted Mr. McDonald experienced an everyday business occurrence.
 
 Id.
 
 at 100-101.
 

 Also, Greyhound cites
 
 Favorite v. Louisiana Health Care Authority,
 
 98-721 (La.App. 5 Cir. 12/16/98), 725 So.2d 556. Ms. Favorite experienced verbal reprimands on a daily basis, and her supervisor also used abusive language in a loud voice. Ms. Favorite experienced anxiety attacks and crying episodes. However, Ms. Favorite obtained medical treatment after one particular episode involving her supervisor telling her to shut up and pointing a finger in her face. After the incident, Ms. Favorite “experienced physical numbness and twitching in her face, a skin rash and she thought she was having a stroke.”
 
 Id.
 
 at pp. 2-3, 725 So.2d at 557. The workers’ compensation judge, while determining the supervisor’s conduct was appalling, found the behavior was not sudden and unexpected and the behavior did not constitute extraordinary work stress as required by the statute. The appellate Court affirmed the judgment of the workers’ compensation judge.
 
 Id.
 
 at p. 5, 725 So.2d 558.
 

 Lastly, Greyhound cites
 
 Tavella v. Sav-A-Center,
 
 2003-0458 (La.App. 1 Cir. 12/31/03), 868 So.2d 752. Mr. Tavella complained that he was accused of |Rhaving an affair with a co-worker. Mr. Tavella continued to receive treatment for stress related to his job, but thereafter took a medical leave of absence. When Mr. Tav-ella was unable to return to work upon the exhaustion of his paid medical leave, he was terminated.
 
 Id.
 
 at p. 2, 868 So.2d at 752-53. The Court affirmed the workers’ compensation judge’s finding that Mr. Tav-ella failed to meet his burden of proving extraordinary stress by clear and convincing evidence.
 
 Id.
 
 at p. 3, 868 So.2d at 753.
 

 By contrast, in the case
 
 sub judice,
 
 Mr. Peters, unlike Mr. Bryant, did receive threats. Mr. Peters believed he was in imminent danger of the threats being carried out when the most vocal of the pas
 
 *1097
 
 sengers issuing threats came down the aisle toward the front of the bus.
 

 Further, all of the cases cited by Greyhound involved an employee and supervisor. None involved an employee and an unknown third-party. While Mr. Johnson testified to incidents involving upset passengers, he did not testify that he was ever threatened by a passenger. Indeed, while it may be commonplace for passengers to become upset and grumpy when their travel plans are delayed, no evidence was presented that it is commonplace for those same passengers to issue threats.
 

 Even though Greyhound emphasized that Mr. Johnson finished driving the passengers to Houston while making adjustments to the mirror, the evidence presented does show that the mirror was broken. Indeed, even the vendor who was called out was unable to repair the mirror.
 

 Greyhound pointed out that the ambulance records and Lafayette General Hospital records do not mention that Mr. Peters told ambulance or hospital personnel that he was threatened by any passengers. However, the ambulance |9records note that Mr. Peters was disoriented and barely able to communicate. Indeed, Mr. Johnson testified that he found Mr. Peters shaking and unresponsive. The Lafayette General Hospital records note that Mr. Peters was having difficulty speaking.
 

 Greyhound also pointed out that Dr. Mendoza’s notes did not mention a threat by any passenger. Dr. Mendoza testified that he could not say he had independent recollection of whether or not Mr. Peters mentioned being threatened because he had already read other reports which mentioned that Mr. Peters stated he was threatened by a passenger. Greyhound thus concluded that no threats were made. However, Mr. Peters testified that he was threatened. Specifically, Mr. Peters heard one passenger say, “I ought to pull that f — ing driver out of this seat and take this bus myself, I would drive this f-ing bus without that mirror.” The workers’ compensation judge found Mr. Peters to be “very credible.”
 

 Additionally, Dr. Mendoza testified that if a passenger who had made verbal threats ran towards the front of the bus, “it would have triggered an anxiety situation for me, if I thought someone was coming to attack me. So I think it would be reasonable that if someone fears that they may be attacked, any one of us, then I think that we would probably experience — most of us would experience some degree of anxiety.”
 

 Greyhound argues that Mr. Peters did not prove that he suffered from an event causing “extraordinary stress.” Greyhound notes Mr. Peters has a history of psychiatric problems, and argues that a person diagnosed with paranoia would perceive that a passenger advancing up the aisle would have harm in mind. However, while Dr. Mendoza’s notes refer to a history of paranoid delusions, a note dated January 26, 2006, relative to the earlier 2004 episode state “Paranoia | inmost [sic] probably sec to depression.” Dr. Mendoza testified that it would be a reasonable assumption that Mr. Peters was suffering from some type of paranoia in relation to the visit in 2006, but there is no indication that Dr. Mendoza diagnosed Mr. Peters as being paranoid. Greyhound further refers to Mr. Peters’ “obsession” with a self-perceived indentation in his right temple as Mr. Peters continuing to exhibit paranoid behavior. While Dr. Mendoza saw no such indentation, the Lafayette General report indicated Mr. Peters had a droop on the side of his face.
 

 Greyhound argues that Mr. Peters experienced a panic attack. Dr. Mendoza testified that a panic attack occurs out of the
 
 *1098
 
 blue, and it is not something that is associated with any particular situation or stimulus. Thus, Greyhound argues there was no “extraordinary stress” that contributed to Mr. Peters’ panic attack. However, Dr. Mendoza noted that it was Mr. Peters, a layman, who utilized the phrase “panic attack” to describe the February 1, 2007 incident. Dr. Mendoza testified there are similar phenomena where people, in certain situations, have an intense anxiety reaction. Dr. Mendoza stated that the intense anxiety reaction may be similar to that of a person having an anxiety attack, but because the reaction is provoked, those reactions are not by definition a “panic attack.” Dr. Mendoza diagnosed Mr. Peters as having an anxiety disorder. Dr. Mendoza recommended that Mr. Peters refrain from driving a bus for awhile, but Dr. Mendoza also believed this was a temporary thing and specifically stated that Mr. Peters was not permanently disabled.
 

 For the reasons cited herein, we find the factual conclusion reached by the workers’ compensation judge was reasonable.
 

 Accordingly, we affirm the judgment of the workers’ compensation judge.
 

 AFFIRMED.